And whenever you get ready, Mr. Breach, we'll hear from you. May it please the Court. Your Honors, I've been appearing before this Court for almost 30 years, and I have a great deal of respect for the United States Court of Appeals, I would not burden this Court with a mundane interlocutory appeal based on a denial of qualified immunity to a police officer unless I were fully satisfied that the District Court had erred in its responsibility and that based on the summary judgment record that it was required to consider, it concluded that material facts precluded the granting of qualified immunity where in fact no such dispute of material fact, and certainly no genuine dispute of material fact existed. I think in this case where Judge Williams made his mistake  with the proof needed by a prosecuting authority to prove an individual guilty of a crime beyond a reasonable doubt, there is no genuine issue of fact, no genuine issue of material fact in this record as to what Deputy Christopher Long knew, as to what he was told by the security guards prior to his arrest of Ms. Jiggets. Mr. Breeds, would it be appropriate for me to suggest that perhaps you start with the excessive force claim rather than the probable cause claim? I would be happy to move to that, because there I think what we do is focus on not only the Court's responsibility to determine what facts are material and are there disputes as to those facts, but there is another obligation, and that is to determine whether or not those disputes are genuine. On three occasions in her testimony, Ms. Jiggets used the word pushed, pushed to the wall, pushed to her knees, pushed to the floor. She used other words in other pages, but on three occasions she used words that were perfectly consistent with exactly what Deputy Long did when he used an arm bar to effect this arrest because Ms. Jiggets would not obey his commands, repeated commands, and would not surrender her cell phone. The arm bar pushed her to the wall, takes you to your knees, and you are pushed to the floor. With your face first? Yes, Your Honor. Really? Absolutely. And on all circumstances, that force with that result is reasonable. You're saying as a matter of law? No, Your Honor. Well, tell me what you're saying. No, Your Honor. If an individual complies with an officer's commands, basically to turn around... I'm going to assume that the person doesn't comply with the command. They said, okay, I don't want to be arrested. All right, go ahead from there. Yes. I would say that the use of an arm bar against any person who is either actively or passively resisting would be as a matter of law not excessive. It is a compliance technique not designed to injure. What the... Go ahead. I'm sorry. So we have a 14-year-old, 5-foot, 100-pound girl. Yes. So obviously you know where I'm going. How about a 12-year-old, 5-foot, 100-pound girl? Your Honor... Your answer is the same. I think you would be... How about a 10-year-old, 80-pound? I mean, where do you draw the line? Your answer to Judge Gregory, I thought, was as a matter of law, he can use an arm bar resulting in sprained ligaments on anybody if they don't comply with his instruction. Again, one thing I would point out, that there is no record of any sprained ligaments in this case. But certainly if we want to talk and reduce it to the absurd, we have to look at, is the individual of an age of arrest? If so, that individual is of an age to resist arrest, either actively or passively. Once the decision to arrest is made, it's not the officer's obligation to say, now how should we do this that is the least painful, that may take a little longer. His obligation is to press through an arrest. He gave this 14-year-old every opportunity to simply place her hands behind her back and be handcuffed. Your argument is that he had an obligation to arrest? He had made... He had an obligation to arrest? He had an obligation once he had told her that she was under arrest to press forward, and that's what he did. Well, he had an obligation, or I don't know about an obligation, but he had a right to take her into custody once he announced arrest. And the question is, when you have someone who resists arrest and doesn't comply, what may an officer do to bring that person in custody? And your argument is that the officer used straightforward police technique in getting handcuffs on somebody who resists handcuffs. Absolutely. There is no specific definition. Every situation is different. There's another way of saying there's a dispute, there's a genuine dispute of material fact. No. That's what you just said. Not here. She testified on three occasions that she was pushed, and her attorney conceded an oral argument that it was an arm bar that was used. That's at page 28 of our brief. We cite that in the joint appendix. There is no dispute that an arm bar was used. She wasn't kicked, she wasn't struck, she wasn't slapped. It was over like that, because that is what an arm bar is designed to do. You're to the floor, you're handcuffed in seconds, and it's done. He didn't have the obligation to wait until she finished her phone calls, until her parents arrived, until she decided to accede to his request. He had announced she was under arrest. It's no longer a debate. It's now a police officer fulfilling his obligation to take the person into custody, using the most reasonable amount of force, as minimal as it was here, to effect that arrest. And that was what was done. Here we are six years later. Now you shift to a different concept. You said that the technique was proper. Now you said that the minimal amount of force was used. How do we know that? The arm bar is... That's a technique, that's not force. It's a technique, it's not force. It's force. It's force to the extent that you take a... It takes force, obviously, to move someone's arm around. But I can wrench your arm to a point where I can pretty much do a lot of damage to your... Oh, I can do it. So force is relevant. Is it not? Counsel, can you answer that question? Is force relevant? Absolutely. Well, then, how do we know how much force was used in using an appropriate technique when the plaintiff says there was so much force that she was forced to get face down, and we have physical injuries in this case. She's 100 pounds, and he's, what, over 200 pounds. Much to her advantage in terms of weight. How do we know as a matter of law, as the district court found, that that is not a factual question of force? Because, again, Your Honor, an arm bar basically assumes that some force is going to be used. It has to be. And that arm bar is designed to push you to your knees and then push you to the floor. That is what the plaintiff testified to. That is what her attorney conceded what was done. If this were a case where he had taken her arm and ripped it behind her, carrying ligaments, causing some serious injury, or even non-serious, that would be another thing. If he took her to the ground by the arm bar and then kicked her, that would be another thing. But there is nothing to show he did anything more than affect the arm bar. To your knees, to the ground, handcuffed, done. And there is no physical injury here to this individual's face, her arm. She made no complaint of injury. It was her parents, when they arrived, who said, not only will I have your job, deputy, but she's going to the hospital because she's hurt. Seen in the emergency room and released. Every arrest incorporates some amount. No injuries were reported, no clinical findings of injury in this case. There was a complaint at the hospital that she had soreness in her shoulder. That was it. There is no objective finding of any evidence of injury in this case or any follow-up, none. Not a scrape, not a cut, not an abrasion. It's not Ms. Jigot's right or anyone else's right to determine when they will allow an announced arrest to occur. It is the officer's duty and obligation to press forward to affect it. It was done here with minimal force, not in violation of the Fourth Amendment. And if using an arm bar was inappropriate, I beg to differ. And I believe that the summary judgment record establishes this officer acted within the confines of the Fourth Amendment, used only minimal force to effect an arrest in seconds without any substantial injury to anyone involved. And for that reason, at a minimum, he is entitled to the defense of qualified immunity. I'll reserve my time. Thank you. Mr. Temple. Good morning. May it please the Court. My name is Donald Temple, and I represent the appellee, and now not a minor, but Ms. Jigot's. It is our belief, and based upon this record, number one, is that the Court should not exercise jurisdiction over this case. Assuming that it does, however, we believe that there is no basis, given the highly disputed factual record below, to recognize or to protect... Let me ask you if... With respect to the excessive force claim, shouldn't we look at Ms. Jigot's testimony on that? Absolutely. And I thought that that was the argument being made, that we accept what she claimed happened, and any other objective record, and determine whether that's excessive force. It seems to me... whether it's excessive force is a question that you can argue, but I'm not sure there's any fact that's disputed about it. Well, there is... She was resisting arrest, she snatched her arm away, he tried to get her cuffed, he gave her multiple commands. She said she was talking on the phone, she didn't obey him, she conceded that. And then she described how he then used force to put her in handcuffs. And the question is whether the force she described used to a person resisting arrest was excessive. And I'm not sure there's a dispute there. With respect to the arrest itself, the decision to arrest, there's not even an effort to engage in different facts. The officer was told by mall security of the circumstances, and no one has disputed what he was told. Where's the material fact that's in dispute in this case? If I may? Yes, of course. As to the former question, first and foremost, it is highly disputed. I would direct the Court's attention to Joint Appendix 72 and Joint Appendix 124. For example, what the officer is saying, the first question that comes up... Forget the officer. Take her version. The record, in terms of the record, her word. Question number one is when did the arrest actually occur? At issue. What happened in that particular incident factually is that... She conceded he said he was under arrest and she pulled away. She did not concede that. In fact, what she says is that... She had my arm. No, what she says is that she was not told that she was under arrest until after she was assaulted, but to draw your attention to the assault and the way that it played out. She was there in the room and on the phone. She was talking to her mother so that her mother could monitor what happened because at that particular point in time, she had been falsely accused, she had been searched. The evidence was clear that she hadn't stolen anything. What happened with Officer Long is he said to her, I want that... She was searched before she was arrested? Absolutely. She had been searched, and this goes to the latter question, but I want to try to concentrate. Who searched her? The security guard who made the representation to Officer Long, who actually, and this goes into... But that doesn't have anything to do with Officer Long, does it? Well, it does in part, and I think that the court... I don't want to confuse the questions. They're somewhat related, but as to the former question, Ms. Jigot's testimony, which is on 124, is that he snatched the phone, but his testimony is that she swung at him. It doesn't matter. Except the question is whether it's material. Do you accept her statement of what occurred to evaluate this? If you accept her statement as to what occurred, he's basically saying, accept the statement, I did not violate the Constitution, or at least I didn't violate it with the reasonable belief that I was violating it. He thought he was acting in accordance with the right to make an arrest. And the question is, okay, what facts are we going to apply? And the answer, he says, is give her version of the facts. Well, didn't we look at the latter question to get to why at that particular point in time? No, no, the question in this case is whether we consider immunity at this stage. And the reason it was denied is because there was a material fact in dispute. And the question is what material fact is in dispute if you accept her statement? Whether there was probable cause to arrest her at that particular point in time. And are you asking on the... No, no, that isn't the issue. The issue is, first, whether there's a material dispute of fact as to what he saw, said he saw, on which he made the judgment to arrest. And that's undisputed. And the second issue is, is there a material fact as the force that was used? Now, I'm trying to... You're trying to decide the merits of the case. No, I'm not trying to decide the merits. I'm trying to go to the underlying question that you asked as to probable cause. And your question preceding that was whether or not there was a factual basis for his assessment that there's probable cause. Whether there's a factual dispute... Whether there's a factual dispute. ...about his decision. In other words, is anybody... He says, I was told A, B, and C. Is anybody disputing that? Yes. Who? And with what? Not in this record. Well, we are disputing that because the representation that he's making is at issue. The question is, is the credibility of what he was told. He's relying on double hearsay. What evidence in the record disputes what he said? Well... You don't have to evaluate the evidence. He had some knowledge, and he represented what that knowledge was. He said he was told by the security guards A, B, and C. Now, tell me what in this record creates a dispute about what he was told. First and foremost... What he was told. I'm going to get to that. First and foremost, we never had an opportunity to depose Officer Long or the security guards, notwithstanding that, to answer your question. You need to focus on the issue. The issue in this case is, is there a dispute of fact in this record which would preclude us from ruling on an immunity issue? On the issue, on the disputed fact, is whether he had enough evidence. No, no, not whether he had enough. What evidence, what was he told? He was told by a security guard who was with Ms. Jiggits in the store when she was searched, and he was told that this lady was believed to have stolen something. Even though she had been searched... I understand, but see, you keep going back to the merits. I'm suggesting you may win on the merits. The real question is, at this point, the officer making the arrest is told something. He didn't witness it. He's told something. And the question is, is there a dispute about what he was told? He said, I was told A, B, and C. I was told she, they believe she stole something, and whatever he said, they told. And no one in this record has disputed what he was told. Well, the question is the reliability of what he was told. Oh, no, that's not the question. In part, it's a hearsay statement. It's a double hearsay statement. It may be out of the sky, it may be insufficient, but it's still the only evidence we have. We can evaluate the evidence later, but the district court said there was a dispute of fact about it that had to be resolved. You're arguing whether the evidence was sufficient, which is a legitimate argument. But at this stage of the game, we have to take the undisputed fact, what he was told, and decide whether there's a dispute of fact. Whether there's a dispute is the issue of jurisdiction, not whether it's sufficient. To the extent that the probable cause is based on the security guard's statement to him. And if that statement... All he had. That's all the officer had. He had the statement from the security guard, and he conceded it, and no one's disputed that. But that's not the point that he made the arrest. No, that's what he decided to arrest, based on that evidence. He didn't have any new evidence to arrest her. He based it on what he was told by the security guard, right? He had the testimony of... No, no, no. He had the evidence... That's my question. Did he have any facts other than what he was told by the security guard? He did. Ms. Jiggins. He already decided to arrest her. She told him that she hadn't stolen anything, and at that particular time, he has a conflict. So he has the officer. The question is, who else said anything? The officer and him. He conducts an investigation, okay? At a certain point, he decides not to arrest Ms. Jiggins, based upon that particular assessment. He arrested Ms. Jiggins because he wanted the phone, and he said that she refused to give it to him, and then she swung at him. That triggered the particular arrest. He then told her to put her hands behind his back. He did not say... See what you're doing? You're arguing the merits of the case. You're not arguing whether there's a dispute. You can take his testimony about what he was told, because nobody disputes that, and you can take her testimony about what occurred when he tried to arrest her. And on those two bases, there is no dispute. And then that leads to the question of whether we can resolve the immunity question. When you get to the question of whether there's immunity, then you may have to say, is there a constitutional violation, and was he making a bad guess in a gray area, or should he have known he couldn't do that under the Fourth Amendment? That's another issue. But the issue of jurisdiction, of whether we hear this case now, is whether there's a dispute of fact that's material to the immunity. Well, to the extent that you exercise jurisdiction... It's a whole issue in this case. Well, the... I'm sorry, Your Honor? It's a whole issue. Well, I don't know that it's the whole issue, because you... Well, you need to tell me why there's a dispute of fact. You have the dispute of fact because the issue of probable cause means that when you rely, when the officer... You're just disagreeing with his judgment that there was probable cause, and you can argue that. I'm not disagreeing. He made a judgment about... He said, I believe this is probable cause. But regardless of whether it's probable cause, the question is, the evidence on which he relied to make that is undisputed. I think... to the extent that that evidence is undisputed, the question still comes into... The issue is still whether that evidence is credible. No, it doesn't come into question as to whether it's disputed fact. If it's... But it's... If it's incredible, it still can be undisputed. But if he's relying... If it's a probable cause issue... No, it's not a probable cause. It's a question of whether this is... You understand this officer has a right, in going about his business, to be immune from being sued. And when the trial comes up and he's accused of something wrong, he has a right to have our court review the immunity unless, unless we can't resolve facts and they have to have a trial. I understand that. And the district judge didn't rule on the immunity because he found facts at issue. And I'm suggesting to you that the court just looked at a dispute about who pushed who, I mean, who kicked who, and said there are a lot of disputed facts, just like you said, a bunch of disputed facts. But I'm saying as to the immunity issue, there's no disputed fact. The question about making the arrest was made by the officer. And that officer made that based on one collection of data. That's what he was told by the security guard. And nobody disputes what he was told. The security guard doesn't say, I didn't tell him that. Judge Williams decided that... I know what he decided. He decided that there was an issue here relative to the reliability of the hearsay to justify the probable cause determination. If, in this particular case, the credibility strain, and what we're arguing is that before we allow in a case, at this early stage of the case, in all the cases that he supports, there is full discovery. Let me ask you this. If we assume you're right, that he's totally incredible, that's an issue that can be decided at some point. You can always make that argument. But the fact that somebody's testimony is totally incredible doesn't mean it's been disputed. The question is who's incredible. I'm not talking... Oh, so you're saying the officer's incredible. I'm saying that there is a... basis, based on this record, that the officer is saying that the security guard who communicated with him told him three misrepresentations, three things that were not true, and that that was a predicate. He didn't know they were not true. Well, the question is not whether he knew. The question is whether we have an opportunity to... It doesn't matter, because you have to show he's making the judgment about arrest, and he acted on information. Is there a dispute about what key information he had? There isn't, but with all due respect, if that were the case, and in every case where an officer is sued, an officer gives you a representation of something that he says, and you don't have a chance to litigate. You have a chance to litigate at some point as to whether that's a constitutional violation.  we get to hear the case if there's no dispute of fact. But if you get the chance to hear the case if there's no dispute of fact in a summary judgment context, the rule generally allows for the plaintiff to have some opportunity to discover the record. In this particular case, an officer can make a report... What's all this record here? I'm sorry, sir? What's all this record? It looks like depositions were taken. She testified fully. The officer testified. No, that's not correct. In fact, the... What is this? This is a deposition of Ms. Jigot's police records. There is an affidavit from the officer. The plaintiff never had an opportunity to depose Officer Long. Can you explain why not? Yes, because there is a stay of discovery at a certain point because the court was considering the rulings of the retail store on the summary judgment questions. And so during that... So before you depose the officer... We didn't depose the officer. I'm sorry? We did not depose the officer. That's what I'm asking. Before you could depose the officer, the court stayed all discovery... There was a... In connection with... Go ahead, go ahead. Because I'm curious. During that time, Officer Long had filed his motion. So the court wanted to... There were two motions pending. He filed a pre-discovery motion... Yes. On qualified immunity. Yes. Okay, go ahead. For purposes of the litigation on the claim against Officer Long, which was the 1983 false arrest... So Ms. Jiggins had been deposed by the other parties. That's correct. And I take it Mr. Breeds did or did not participate in that? He did not. He did not? No. He had notice of it, of course. At that particular point in time, he was... When he became a party, that discovery had been stayed. So there was no discovery when he was... Okay, so we're actually here, strictly speaking, we're here on a motion to dismiss on qualified immunity grounds. And or for summary judgment. And or for summary judgment if the record of the other party's discovery is considered, which it certainly can be. Okay, so this is not only an interlocutory appeal, this is a pre-discovery interlocutory appeal of the named defendant. That's correct. Suited in individual capacity. That's correct. Okay, thank you for clarifying. Where did the court stay discovery? The discovery, it was not a stay ordered, it was a stay in effect. And I will explain that because there were motions pending. So there was no need to... There was a motion for summary judgment and there was an affidavits put in and there was depositions put in. And the court considered all that. But at that particular point in time, we could not do any... By the time this motion was filed, we did not do any discovery and we did not do any... Did you ask for any for the summary judgment motion? We... In the trial record and the plaintiff's motion, we certainly... We argued that it was premature indeed and that the court shouldn't rule until we have... Well, I understand because you were saying that there was questions of fact, but did you... When was the motion for summary judgment heard? It was decided December 2010. All right. It looks like the so-called motion to dismiss or alternatively motion for summary judgment by Officer Long was filed on or about June 15th, 2010. That's correct. And you're saying as of that day, June 15th, 2010, you had not... You had not deposed Officer Long. We never had a chance. He filed his motion right after the court, shortly after the court ruled that we could bring him in as a party defendant. I see. In fact, you didn't serve him until March 31st, 2010. That's correct. Was that on an amended complaint or was he always... It was on an amended complaint. On an amended complaint. Yes. Okay. So we're really early here. Well, we're early to the extent that when we deal with Officer Long, the other discovery was going on. You got to remember in this particular case, Officer Long, there was some question about who he worked for because he was an off-duty police officer working and then whether the action that he took was done as a... I totally get it. I totally get it. He was... Was he in uniform? He was in uniform. He was in uniform, but he was off-duty working private security. And that private security function was actually in play until he actually executed the arrest. And that is after he took her back into the room and then began to question her. Her position was, I don't have to answer your questions. That's when he took the phone and he says she swung at him. But that also goes... And you have on page 246 of the record her responding to your question, when did he tell you you're under arrest? And she says, after I was caught. That's correct. It seems to me that this was all done on summary judgment. I'm looking here. And you file an opposition to the summary judgment motion. You quote all the testimony. Plaintiff's opposition to motion dismissal for summary judgment. Then you put in... That's correct, Your Honor. All right. And you talk to the standard fact. You don't ask for any additional discovery. We argue that it's premature, though. You say there are factual disputes. You have exhibits attached to it. I don't understand what your suggestion is that this was before discovery. Well, we argue... We didn't say that it was before discovery generally. We said that it was premature relative to Officer Long because Officer Long was making a statement about individuals which were flat out untruths because he said that these individuals... If this individual, for example, saw that she was searched and that she didn't have anything, for him to tell Officer Long that she was stealing or to say that she was uncooperative when in fact she was brought back into the store and cooperated, this was all untrue. Or that she walked away from the manager, which was also untrue. And then in addition to that, there's a significant factor in the record Officer Long says that he received a call from someone saying... I understand, but procedurally this was a full-blown motion for summary judgment with affidavits and evidence being considered and no one asking for additional testimony. Anybody. And everybody had an opportunity to do it and the court looked at the standard. You filed a motion. I'm just looking at your motion. It's filled with facts. And your argument is they're material facts in dispute. I think it's a red herring to suggest  Well, if I may, my time is going to run out shortly, Your Honor, but I would just say that I was often told that a red herring was to throw somebody off the set. The question is, this was a full-blown summary judgment motion and no one's complaining that he didn't have enough time to depose anybody. Your Honor, we told the court that it was premature. We told the court that because we thought... You didn't say that in your motion. We did say that. There's an argument section that distinctly says that the motion is premature. You said because there's factual disputes. And the implication is that there are people that we have to depose to verify whether Officer Long is telling the truth or not. All right, anything else? Nothing further, Your Honor. All right, thank you. Your Honor, very briefly, Mr. Temple had every opportunity, if he felt that Officer Long's motion for summary judgment was premature, to seek relief under Rule 56D. He did not do that. The plaintiff had been deposed. The plaintiff had all of Officer Long's reports and his detailed affidavit. So instead of coming to the court and saying this is premature, we need additional discovery, the plaintiff made an election to contest the motion on the merits. That was a calculation that counsel made. It turned out to be good for him. Yes. The court considered this as a motion for summary judgment because we submitted an affidavit that was not countered with affidavits. We submitted the deposition transcript of the plaintiff. There was nothing submitted in this summary judgment record to dispute what Officer Long was told. And, in fact, the plaintiff herself in her deposition confirmed what he did concerning the manner in which the arrest was affected, and that was confirmed by counsel at oral argument. I'll close with this. Your position is that... Yes, Your Honor. Even if everything that he was told was a bald-faced lie, it doesn't make a difference. Is that correct? Your Honor, my position is this, that even hearsay can be relied upon by an officer to make an arrest... No, take my question first. Maybe answer mine, then you can expand. Does he know it's a bald-faced lie? Because that has to be known. That's why you need to depose him. Right. My goodness. That is why you have a trial on the merits. There is no reason for him to disbelieve what he was told by security guards. No, Your Honor, take my question. No reason. I'm not talking about his belief. I'm saying that your position has to be that even if everything that was told to him was a bald-faced lie, it doesn't make a difference. If there is an addition of reliability about the hearsay that the officer has had, whether or not it's true or a bald-faced lie, if he has the right and ability to rely upon it, then he can use that information, process it, and establish probable cause, and that's what was done here. Bald-faced lie, that goes to guilt or innocence, not to probable cause. He's not conducting... Well, it gets even more refined than that because the question in this case is whether the officer was deliberately violating the Constitution. That's right. And he's acting on information given to him. Even if it's a lie, he can't assess that. That's right. These are security officers in the mall, and they say something to him, so based on that evidence, he acts. He's not a finder of facts. The test in the case is whether there's a dispute about what he was told... Correct. ...because he conceitedly acted on that. That's right. All they needed to do was to submit an affidavit from Ms. Jiggits saying that that was not what he was told. But you know why they couldn't do that? Because Ms. Jiggits never got off her cell phone to listen to a single word. Ms. Jiggits didn't know what he was told. He was told this before he even got to Ms. Jiggits. That's correct. That is correct. In fact, her father, according to her testimony, her father specifically asked to speak to the officer... Yes. ...which is what any parent in this courtroom would do under similar circumstances. And the father also... And according to her, Officer Long wouldn't even accord her parents the respect... ...do anybody under these circumstances... ...to take the phone and speak to the parents. That's the state of this record as we sit here. He did not... That's the state of this record. Also on that record was Ms. Jiggits conveying the threat from her father to Officer Long that my father is coming here to kick your ass. Well, she didn't have to convey anything if Officer Long had shown the respect to take the phone and speak to the person who she just identified as her parents. Respect... If he did to her... If he did to his daughter on this record, drawing inferences in favor of the plaintiff, if he did to his daughter, his 14-year-old daughter, what he did to her, he'd be subject to prosecution for child abuse. Your Honor, with all due respect, I think that's incredibly extreme. This officer acts on probable cause. He doesn't need to act as a juvenile intake officer and speak to everyone in the family. Does he have probable cause to arrest? Yes. Based on the undisputed facts. Actually, most officers reject anybody who interferes with the officer's process. That's correct. You walked up to behind a car where they're giving a ticket and said, I happen to be my guy's father. The officers would go back to your car. Incredibly. You're interfering with my process. No officer is going to be drawn into those blind alleys. He had an obligation to conduct an investigation here, an investigative detention. He established probable cause to arrest, and he used minimal force to effect it. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. This record establishes abundantly that this officer was a professional and did not knowingly violate any law when he either made the arrest of Ms. Jiggits or took her into custody. I have a question. Are you familiar with the case, I believe it was out of Mississippi, where there was a white schoolteacher who went with students, black students, down to a lunch counter, and the question was whether or not, in fact, they were set upon and they were served, but she wasn't served, and then the law enforcement officers were there and did nothing, and the question was whether or not they were in cahoots with the violation of their rights. And there, the plaintiff couldn't dispute whether or not, in fact, he was in cahoots with them at all because they couldn't. They couldn't read minds. But then he said, in those circumstances there, it was just a credibility problem as such, and the Supreme Court said that case could go forward. Don't we kind of have that here a little bit in the sense that, you're right, Ms. Jiggits would never know what was said by those persons, but here, I think that's what the district court was troubled by. Why in the world would security guards who had seen this young lady searched, found nothing, no evidence, they looked at her bags, her friend's bags, they found nothing. Why would they turn around moments later and tell Officer Long something like that that was totally different than that, at least what the plaintiff could control, in that similar type thing, because, for example, you didn't bring forth the affidavit of the guards, which is kind of interesting. If that's what he said, the first thing I'd do, I guess, if I was pregnant, I'd say, look, didn't you tell my client this, whether it's true or not? You didn't do that either. Now, there may be reasons why you didn't, because maybe you run your case to where you want, but isn't this similar to circumstances such that, because if not a police officer, I'm not talking about your defendant, could say, yes, I was told this. That's what they told me. No matter how incredible that might be, you would get qualified immunity. You shake your head, but why is that not so? Absolutely. Why? Why would that not be? If there's an indicia of reliability about what an officer is told, he wasn't told by the security guard that the plaintiff was seen landing in a spaceship and walking into the store. No, no. You're missing my question. It's not the indicia of liability. It's the indicia of the incredibility that he was told that under the circumstances. That's the difference. That's a different analysis. That's in the Mississippi case. Under the circumstances, police officers watching someone directly violate their rights and discriminate in that lunch counter, it's just unbelievable that they would not be in cahoots. They just sit there and say, oh, yeah. But you can't prove that we were in cahoots for state action. That was the question. And the Supreme Court said, yes, you can under those circumstances. And that's what I'm saying here. Address that. And I believe that's still a precedent in terms of the law. This officer was nowhere near forever 21. This officer saw nothing that went on inside that store. He saw nothing that went on immediately outside it. He was approached in the food court and told information, information that certainly seems reasonable and reliable as it came from the storage assistant manager through the security guards. I must not be making myself clear because everything you're saying you're really not addressing the issue of the case. The case is not whether or not there's an indicia that he would believe it. Well, sure it is. No, no, no, no, no, no. He's not a mind reader. No, no, no, no, no, no, no. The case I'm citing didn't talk about the indicia believing. The question is, is there under the circumstances any reliable indicia that he would be ever told that given that it's so in direct contradiction to what just happened, at least factually. I mean, for example, that's like a security guard saying, okay, I searched the bags, I searched the bags, found nothing. No evidence. And then two minutes later said, officer, I want you to arrest that woman because we found jeans in full of her bag. I mean, the indicia there just seems so inconsistent, not the question of whether or not if he heard that naked, believe it, but it is so inconsistent that he would ever be told that because that's where the case turns to, really. Was he ever told that? Mr. Breeds, is there any evidence in this record to suggest that the officer should be on notice that the information was a lie or deceptive or in bad faith? No. We're talking about the officer's liability, not the store's. The officer did what he had to do. Or ultimate guilt or innocence. There was none. In fact, the officer had both guards repeat the information once he went into the hallway off the food court area, and it was only then that he made the determination that he had probable cause to arrest. But to engage in this kind of speculation and placing burdens on officers that simply could not be met in the daily enforcement of the laws of the state, I think basically would read the defense of qualified immunity out of existence. And if one case cries out for its application, this is it. And like I said at the outset, our eye wouldn't be here. I think we've gone through the red light, both of you. Thank you. We'll come down and greet counsel and take a short recess. Thank you.
judges: Paul V. Niemeyer, Roger L. Gregory, Andre M. Davis